NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 19 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> LOUISE W. MUREITHI, JUSTIN DOUGLAS COZART, JOHN MICHAEL KORZELIUS aka DR. K, <br><br> Defendants-Appellees. | No. 22-50105 <br><br> No. 8:20-cr-00040-DOC <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted December 8, 2023
San Francisco, California

Before: PARKER,** BYBEE, and LEE Circuit Judges.

Over the course of investigating an oxycodone pill mill conspiracy, the

government applied for and obtained six wiretaps. Each wiretap application was

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Barrington D. Parker, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

supported by an affidavit from a special agent with the Drug Enforcement Administration that detailed the government's investigative efforts, totaling altogether more than 400 pages. The investigation resulted in several people being indicted in the United States District Court for the Central District of California. Three[1] of them—Louise W. Mureithi, Justin Douglas Cozart, and John Michael Korzelius, ("Defendants-Appellees")—moved to suppress the wiretap evidence. The district court found that the latter four applications were insufficient and ordered all communications intercepted under those wiretaps suppressed. The government appealed. We reverse.

When considering motions to suppress wiretap evidence, we determine *de novo* whether the information in an affiant's affidavit amounts to "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous" as required by 18 U.S.C. § 2518(1)(c). *United States v. Rodriguez*, 851 F.3d 931, 937 (9th Cir. 2017).[2] If we conclude that it does provide such a statement, this Court "reviews for abuse of discretion the issuing court's finding that the wiretap was necessary under § 2518(3)(c) and its decision to grant

---

[1] Defendant Pierre Delva, Jr. also moved to suppress, but was dismissed as a party while the appeal was pending.

[2] Unless otherwise noted, all citations, quotation marks, and brackets are omitted.

the wiretap." *Id.* This is also the same approach a district court must follow when considering a motion to suppress wiretap evidence. *Id.* at 938.

The district court concluded that applications three through six failed to provide a statement that satisfied 18 U.S.C. § 2518(1)(c) because each contained inaccuracies and omissions. For example, the district court noted that the government either "did not mention" or had only "said briefly that" certain investigative techniques "would not be useful, without including specifics of the techniques or the facts of this case." We disagree. For nearly all the investigative methods employed by the government, the applications not only properly disclosed them but also adequately explained their investigative limitations. For example, the district court concluded that the government failed to adequately discuss how it successfully seized 6,000 pills via "a FedEx mail lookout." However, not only did the government identify its successful seizure of the 6,000 pills in the third wiretap application, but it also explained that the seizure was not the result of a mere lookout; rather, it was the product of a combination of intercepting calls, conducting related surveillance, and executing a search warrant.

As the government concedes, it omitted one investigative technique, but we have little difficulty concluding that this omission was not material. *United States v. Estrada*, 904 F.3d 854, 861–62 (9th Cir. 2018). If, as here, the knowledge of the existence of the omitted investigative technique would have no effect on the

3

issuing court's decision, then the omission is not material. *United States v. Rivera*, 527 F.3d 891, 901 (9th Cir. 2008). Here, the government's only omission was that it stated that investigators were "planning" a trash search of ChiroMed, one of the pill mill clinics, for the week of October 22, 2018, but it had actually already conducted a trash search on October 19, 2018. The government corrected this omission in the final wiretap application.

We acknowledge that at a few points, the government relied on generic explanations, but our precedent makes clear that such an approach is not invariably fatal. An affidavit satisfies § 2518(1)(c) "as long as it as a whole speaks in case-specific language even if some language in the affidavit may be conclusory or merely describes the inherent limitations of certain investigatory techniques." *Estrada*, 904 F.3d at 861. Put slightly differently, a wiretap application may satisfy § 2518(1)(c) "despite the fact that it included some statements merely describing the inherent limitations of traditional investigative techniques" if it included case-specific explanations. *Rivera*, 527 F.3d at 899. Here, we have little hesitation in concluding that the government sufficiently laid out a full and complete statement of the investigative procedures it employed and their limitations for each wiretap application.

As to the second step, the issuing court did not abuse its discretion in finding the wiretaps necessary. Necessity "is evaluated in light of the government's need

4

not merely to collect some evidence, but to develop an effective case against those involved in the conspiracy." *United States v. Garcia-Villalba*, 585 F.3d 1223, 1228 (9th Cir. 2009). While a "wiretap should not ordinarily be the initial step in the investigation, . . . law enforcement officials need not exhaust every conceivable alternative before obtaining a wiretap." *United States v. McGuire*, 307 F.3d 1192, 1196–97 (9th Cir. 2002). This Court is particularly deferential towards an issuing court's findings of necessity when, as here, the investigation involves a conspiracy. *See United States v. Reed*, 575 F.3d 900, 909 (9th Cir. 2009).

None of Defendants-Appellees' challenges to the necessity of the wiretaps is persuasive. First, they argue each affidavit built on one another without independently establishing probable cause and necessity. "Although the government may not rely on the conclusion that a previous wiretap was necessary to justify the current application, historical facts from previous applications, particularly those within the same investigation, will almost always be relevant. . . . If these facts are incorporated into the latest affidavit, the issuing judge may examine them." *Garcia-Villalba*, 585 F.3d at 1232. Here, wiretap applications three and four attached copies of the prior affidavits, and all of the challenged wiretap applications incorporated by reference the affidavits submitted for prior applications. Doing so was permissible and did not amount to an attempt to "shoe-horn" prior investigative work into support for additional wiretaps. *United States*

*v. Gonzalez, Inc.*, 412 F.3d 1102, 1115 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006).

Second, Defendants-Appellees argue that the government circumvented the necessity requirement by making the goals of the investigation impermissibly broad. While the "government may not cast its investigative net so far and so wide as to manufacture necessity in all circumstances," *United States v. Blackmon*, 273 F.3d 1204, 1211 (9th Cir. 2001), robust investigative goals targeting complex conspiracies should be considered when evaluating necessity, *see, e.g.*, *United States v. Forrester*, 616 F.3d 929, 944 (9th Cir. 2010) (acknowledging the investigative goals "not yet achieved through the use of conventional techniques, including the identification of all coconspirators" as justifying the necessity finding). The investigation in this case focused on a complex oxycodone conspiracy that involved a great many players, multiple clinics, and multiple states.

For these reasons, we **REVERSE** the district court's order suppressing all evidence collected from wiretaps three through six and **REMAND** for further proceedings consistent with this Memorandum.